# EXHIBIT B

**Young, Brian**

| | |
|---|---|
| **From:** | Darrell Chambers <darrell@chambersfirmdcmd.com> |
| **Sent:** | Monday, January 24, 2022 11:52 AM |
| **To:** | Young, Brian |
| **Cc:** | Doug Rosenbloom; Sarah Knapp |
| **Subject:** | Re: Nasr v. Al Jazeera |
| **Attachments:** | Complaint for Service.pdf |

⚠ EXTERNAL MESSAGE

Good morning Brian:

Please see the attached Acknowledgement of Service. Kindly complete the Acknowledgement and return to me electronically. I am also happy to send these via snail-mail as well, per the rules. Let me know if you require me to send hard copies to your office.

Let me know if you have any questions.

Thanks!

Darrell Chambers
Attorney at Law

_____

**Chambers & Rosenbloom LLP | Trial lawyers with backbone and heart.**
chambersrosenbloom.com | 4800 Hampden Ln. Suite 200, Bethesda, MD 20814 | Office Tel: (301) 500-1575 | Mobile Tel: (410) 660-3692


The Chambers Firm, LLC
Member/Owner
Princeton Forrestal Village
116 Village Boulevard
Suite 200
Princeton, NJ 08540
Tel (410) 660-3692
darrell@chambersfirmDCMD.com


**Confidentiality Notice:** This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy, or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of the message.

SUPERIOR COURT FOR THE DISTRICT OF MARYLAND
CIVIL DIVISION

| | |
|---|---|
| SARAH NASR,<br><br>               Plaintiff<br><br>v.<br><br>Al Jazeera International USA, LLC, *et al.*,<br><br>               Defendant | Case No.: 2021 CA 004539 B<br>Judge Shana Frost Matini<br>Next Event:  Remote ISC<br>               March 4, 2022 |

To:    Al Jazeera International USA, LLC
        Moeed Ahmed
        Tony Karon
        c/o Brian J. Young, Esquire
        DLA Piper, LLC (USA)
        500 8th Street NW
        Washington, DC 20004
        brian.young@us.dlapiper.com

WHY ARE YOU GETTING THIS?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached. This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you acknowledge service of the summons and complaint by signing and returning the enclosed Acknowledgment. Two copies of the Acknowledgment form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

WHAT HAPPENS NEXT?

If you return the signed Acknowledgement, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 21 days from the date this notice is sent (see the date below) to

answer the complaint. If you do not return the signed Acknowledgement, I will arrange to have the summons and complaint served on you and I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

I certify that this request is being sent to you on the date below.

Date:  January 24, 2022

> */s/ Darrell Chambers*
> Darrell Chambers [980872]
> CHAMBERS & ROSENBLOOM LLP
> 4800 Hampden Lane, Suite 200
> Bethesda, MD 20814
> (301) 500-1575 ext. 871575
> darrell@chambersrosenbloom.com
>
> */s/ Douglas S. Rosenbloom*
> Douglas S. Rosenbloom [1016235]
> CHAMBERS & ROSENBLOOM LLP
> 4800 Hampden Lane, Suite 200
> Bethesda, MD 20814
> (301) 500-1575 ext. 871575
> doug@chambersrosenbloom.com
>
> *Counsel for Plaintiff*

SUPERIOR COURT FOR THE DISTRICT OF MARYLAND
CIVIL DIVISION

| | |
|---|---|
| SARAH NASR,<br><br>    Plaintiff<br><br>v.<br><br>Al Jazeera International USA, LLC, *et al*.,<br><br>    Defendant | Case No.: 2021 CA 004539 B<br>Judge Shana Frost Matini<br>Next Event:  Remote ISC<br>     March 4, 2022 |

## <u>ACKNOWLEDGEMENT</u>

To: Darrell Chambers, Esquire
   Douglas S. Rosenbloom, Esquire

   I have received your request to Acknowledge service of a summons in this action along with a copy of the complaint, two copies of this Acknowledgment form, and a prepaid means of returning one signed copy of the form to you. I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

   I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

   I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 21 days from January 24, 2022, the date when this request was sent. If I fail to do so, a default judgment will be entered against me or the entity I represent.

_____
(Signature of the attorney or unrepresented party)

_____
(Printed name)

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)

SUPERIOR COURT FOR THE DISTRICT OF MARYLAND
CIVIL DIVISION

| | |
|---|---|
| SARAH NASR,<br><br>        Plaintiff<br><br>v.<br><br>Al Jazeera International USA, LLC, *et al*.,<br><br>        Defendant | Case No.: 2021 CA 004539 B<br>Judge Shana Frost Matini<br>Next Event:  Remote ISC<br>              March 4, 2022 |

## **ACKNOWLEDGEMENT**

To:    Darrell Chambers, Esquire
       Douglas S. Rosenbloom, Esquire

     I have received your request to Acknowledge service of a summons in this action along with a copy of the complaint, two copies of this Acknowledgment form, and a prepaid means of returning one signed copy of the form to you. I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

     I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

     I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 21 days from January 24, 2022, the date when this request was sent. If I fail to do so, a default judgment will be entered against me or the entity I represent.

_____
(Signature of the attorney or unrepresented party)


_____
(Printed name)


_____
(Address)


_____
(E-mail address)


_____
(Telephone number)

## **Rule 4 – Failure to Acknowledge Service:**

Unless good cause is shown for not doing so, the court must order the party served to pay:

(i) the costs incurred in securing an alternative method of service authorized by this rule if the person served does not complete and return the Notice and Acknowledgment of receipt of the summons within 21 days after mailing; and

(ii) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Filed
D.C. Superior Court
12/08/2021 18:35PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

SARAH NASR
8525 N. Greenwood Ave.
Niles, IL 60714
      *Plaintiff,*

v.

Al Jazeera International USA, LLC
1200 New Hampshire Ave NW Ste 200
Washington, DC, 20036-6804

Serve:
CORPORATION SERVICE COMPANY
1090 VERMONT AVE. NW, Washington,
District of Columbia, 20005,

Tony Karon
1200 New Hampshire Ave NW Ste 200
Washington, DC, 20036-6804,

and

Moeed Ahmed
1200 New Hampshire Ave NW Ste 200
Washington, DC, 20036-6804

      *Defendants.*

**2021 CA 004539 B**

## **COMPLAINT**

    Plaintiff Sarah Nasr, an Executive Producer for Al Jazeera's digital media platform, files

this action against her employers, Al Jazeera International USA, Tony Karon and Moeed Ahmed

for violations of the District of Columbia Human Rights Act.

### **PARTIES**

1. Plaintiff Sarah Nasr is a resident of Chicago and currently employed as an executive

    producer at AJ+, the digital channel in the Al Jazeera Media Network.

2. Defendant Al Jazeera International USA, LLC is a Delaware corporation with its principal place of business in Washington DC.  Al Jazeera International USA, owns and operates the Al Jazeera Media Network.   Al Jazeera and its subsidiaries collectively employ more than 15 people. AJ+ (AJ Plus) is a digital media brand and platform created and managed by Defendant Al Jazeera International USA, LLC] AJ+ is headquartered in the District of Columbia. Defendant Al Jazeera International USA, LLC is Ms. Nasr's employer under D.C. Code §2–1401.02 (10).

3. Anthony Karon is the Editorial Lead for AJ+.  He qualifies as an employer under D.C. Code §2–1401.02 (10).

4. Moeed Ahmad is the Channel Manager for AJ+.  He qualifies as an employer under D.C. Code §2–1401.02 (10).

## JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to D.C. Code § 11-921.

6. This court has jurisdiction over Defendants pursuant to D.C. Code § 13-423 because Defendant transacts business in the District of Columbia where its station AJ+ is based. The discriminatory conduct arises out of these business activities.

## FACTS

7. Ms. Nasr is an experienced digital media journalist and executive.  She has an MA in journalism from New York University.

8. Ms. Nasr started working for Al Jazeera English in 2010.  At that time Ms. Nasr worked in Washington DC where Al Jazeera USA is based. In 2011 she was promoted to producer and moved to Doha, Qatar for the position.  She was eventually promoted to Senior Communications Associate while in Doha.  In that position, Ms. Nasr played a key role in

developing and launching AJ+, a new brand for Al Jazeera. AJ+ was a new concept dedicated to publishing video content on social media platforms and its own website.

9.  In 2014, Ms. Nasr was promoted to Senior Video Producer for AJ+ and moved back to San Francisco. She was one of the first producers hired for the brand, and she helped build AJ+ from its inception to the international digital media brand that it is today.

10. Before the events in this Complaint, Ms. Nasr's career was on an upward trajectory, and she had good relationships with her managers and supervisors.

11. In or around September 2017, Al Jazeera announced that they would be closing the San Francisco office and relocating the AJ+ staff to Washington DC.

12. Management asked Ms. Nasr to continue with AJ+ and move with the channel.  Ms. Nasr agreed to move again to accommodate her employer.

13. At this time, Ms. Nasr was acting as an executive producer and supervised nine full time staff employees plus at least 3 full time freelancers.

14. AJ+ brought in new management during the relocation process. Defendant Karon was hired as an editorial lead and became Ms. Nasr's direct manager.  Defendant Ahmed, the channel manager, supervised Defendant Karon. These new managers engaged in a pattern of hostile actions towards Ms. Nasr because of her gender which have severely impacted her ability to grow professionally.  These actions, if not corrected, will negatively affect her marketability and handicap her earning potential for the rest of her career.

15. Over time Ms. Nasr's team has been reduced to three full time employees and one freelancer in DC.  AJ+ continued to gut her team through January of 2021. Many of the employees on Ms. Nasr's team were reallocated to Ms. Nasr's male colleagues. The explanations that Defendants have provided for these changes are pretextual.

16. Defendant Karon oversaw Ms. Nasr's work with a level of scrutiny that she had not been subjected to in the past.  He also made decisions that affected her teams and ability to do her work without consulting, and sometimes without even informing, her.  Defendant Karon did not subject the male producers he supervised to this treatment.

17. For example, Defendant Karon would decide to cancel segments that Ms. Nasr produced at the last minute for vague reasons even when she involved him in the creative process.  When Ms. Nasr asked for clarification or guidance for future work, these requests were ignored or met with hostility.

18. Indeed, Defendants Ahmed and Karon rarely addressed Ms. Nasr's questions and concerns about her work and their expectations of her.  Instead, they told her that she was using an inappropriate tone or forum to raise such issues.  Upon information and belief, male colleagues were not brushed off or criticized for making similar comments or raising questions.

19. In June of 2018 Ms. Nasr's team won a regional Emmy award. This was a first for AJ+.

20. In July 2018, Ms. Nasr attempted to address the hostile work environment Defendant Karon's behavior created with his supervisor Defendant Ahmed.  Instead of seriously considering her concerns, Defendant Ahmed told Ms. Nasr that no one else had complained about Karon, so he was "going to have to take a closer look at her."  Ms. Nasr believed that this was a threat to put her work under further scrutiny and find problems with her performance.

21. Shortly thereafter, Defendant Karon told Ms. Nasr during a video call that as an executive producer her job was "fluid," and she would no longer supervise the same team.  This was a major restructuring of her position and Ms. Nasr was justifiably angry and both she and

Defendant Karon raised their voice during the call. At one point Defendant Karon yelled that "he wasn't going to have his role defined by" Ms. Nasr and that it was his "prerogative how to run the team."

22. In a separate meeting with other producers after Ms. Nasr pitched a story for a female producer on her team, Defendant Karon told her that the story could not go forward because another producer, Jego Armstrong was not available to review the work.  Ms. Nasr held the same position as Mr. Armstrong and had been in the position longer.

23. Upon information and belief, the female producer mentioned above filed a complaint against Defendant Karon with the EEOC.

24. In October 2018, Defendant Karon provided a memo to staff outlining how the DC Newsroom would work and how various staff had assisted in the transition. The memorandum largely ignored the contributions of female producers while highlighting the work and projects completed by male employees.

25. Because of this continuing course of discriminatory conduct, on November 2, 2018, Ms. Nasr filed a formal gender discrimination complaint with Al Jazeera's Human Resources Department.

26. A month later, two female HR employees interviewed Ms. Nasr about her complaint.  The interview lasted approximately 30 minutes.  During the interview, Ms. Nasr provided the names of witnesses to Defendant Karon's hostile and discriminatory actions.

27. After she did not hear anything about her complaint, Ms. Nasr attempted to follow-up with emails and by personally visiting the office.  She was eventually told that the lawyer in Doha who was assigned to review her case had left and they needed to assign a new case manager.

28. Finally, the HR Department set up a meeting on March 20, 2019, to discuss Ms. Nasr's complaint.  The meeting was with the HR manager who initially interviewed Ms. Nasr and her second line supervisor Moeed Ahmad, who had threatened her when she tried to address her hostile work environment in July 2018.

29. Unfortunately, this meeting did not have a better result. Ms. Nasr was told that there was no evidence to support her complaints despite the fact that nobody ever followed up with Ms. Nasr after the initial and only 30-minute interview to request documents or to scrutinize the excuses and information Defendants provided.

30. At the same meeting, Ms. Nasr was given a verbal warning for "insubordination" and told she would need to take management training. HR and Defendant Ahmed also told her that her work had not been "up to par" and would continue to be "under scrutiny."

31. This was a blatant act of retaliation for her complaint. Ms. Nasr had worked for Al Jazeera for nearly ten years and had never had a complaint about her work.  To the contrary, her team won an Emmy, two Society of Professional Journalists awards, among various others, and had some of the highest online engagement scores at the channel.

32. When Ms. Nasr pointed this out to Defendant Ahmed, he told her that awards and metrics did not indicate that the content "met Al Jazeera standards." However, at a companywide meeting less than a month later, Defendant Ahmed told the staff that awards were important because they helped build the AJ+ brand, indicating that teams who won awards could be given additional resources to produce additional videos. Although Ms. Nasr's team won awards, her managers gave her fewer resources rather than more.

33. The pattern of discrimination and retaliation against Ms. Nasr continued and escalated after the March 2019 meeting.

34. Defendants began to exclude Ms. Nasr from work related meetings and presentations, intentionally diminishing her credibility and esteem across the organization.

35.  The teams and programs that Ms. Nasr managed in San Francisco were reassigned to other executive producers for pretextual reasons. For example, she managed an explainer show called B/C Facts that was moved to the news department under different branding.

36. A comedy/satire show that Ms. Nasr oversaw was canceled during the move to DC.  A few months later, the same show was restarted under a female executive producer that Moeed appointed.

37. Untold America, which had won two Emmy awards under Ms. Nasr's supervision, was simply reassigned to another executive producer, who was allowed to remain in San Francisco.  Ms. Nasr was never given the option to stay in San Francisco rather than move to DC.  Although the other producer was female, she had not made any complaints about gender discrimination.

38. In early 2020, Ms. Nasr was pressured by the male News Director, Jonathan Laurence, to speak at a gathering for a departing employee.  This employee was among those reassigned to other producers as part of the pattern of removing responsibilities from Ms. Nasr.  Since she was no longer his supervisor, Ms. Nasr asked that someone else make the speech, but finally agreed to do so after several requests.

39. Ms. Nasr spoke about the contributions the employee had made on her team.  During the speech, Ms. Nasr said "I'm sorry management couldn't give you what you needed to stay."

40. Shortly thereafter, Defendant Ahmed and HR informed Ms. Nasr that she was going to be given a written warning for insubordination and violating company policy because of the speech.

41. Management issued a written warning to Ms. Nasr in February 2020.  The waring chastised Ms. Nasr for revealing confidential information about the circumstances of the employee's departure.  However, Ms. Nasr did not have any knowledge of these circumstances because she had not been his manager for over a year.

42. The warning also noted that Ms. Nasr's speech made Mr. Laurence uncomfortable.  Mr. Laurence was the person who pressured Ms. Nasr to make the speech.

43. Ms. Nasr is the executive producer of a pop culture show called Pop Americana. On or around April 21, 2020, a male colleague, Jon Lawrence announced that his team was planning to produce a pop culture related coronavirus explainer video.  Although this would ordinarily be part of Pop Americana, upon information and belief, Defendants approved this piece.

44. Ms. Nasr viewed this as part of the ongoing hostile treatment and pattern of management eroding her responsibilities.  However, Defendant Karon dismissed her concerns and assured her that Pop Americana would continue unaltered.

45. However, in August 2020, Defendant Karon and Defendant Ahmed informed Ms. Nasr that Pop Americana was canceled. Although they claimed this decision was made because of poor ratings, in truth the show had similar analytics to other shows produced by her male colleagues during the same time frame.

46. Defendant Ahmed asked Ms. Nasr to arrange a meeting with with Pop Americana's female producer and presenter about the cancelation.  During the meeting, Ms. Nasr reiterated her disappointment with the decision to cancel the show.

47. After the meeting, Defendant Ahmed sent Ms. Nasr an email accusing her of unprofessional behavior in the meeting. He also criticized Ms. Nasr for not policing her female employee's

tone and for allowing her to complain.  This was similar to the way that Defendant Ahmed tried to censor Ms. Nasr and other female employees.

48. In another incident, a young female producer from the news department wanted to work on Ms. Nasr's food show, Eat This, which had an open position.  The male head of the news department and Defendant Ahmed agreed that the producer could fill the opening and that the news department could have the open position.  Shortly before the producer was to start, Defendant Ahmed decided to delay the transfer which left Ms. Nasr's team down an employee.

49. Defendant Ahmed said the delay was necessary because of the news coverage about the coronavirus.  But Ms. Nasr's team was also producing content in response to the coronavirus pandemic with the same expectations for deliverables and turnarounds.  Ms. Nasr explained this to Defendants Ahmed and Karon but was not granted any additional resources. Thus, she was expected to produce similar content at the same pace as her male colleague in the news department with fewer resources.

50. In May 2021, Ms. Nasr filed a complaint with Beatrice Nyamekye from HR describing the above instances of ongoing gender discrimination and retaliation.  She made this complaint in an email titled "Complaint of Harassment, Bullying, Gender Discrimination and Retaliation."

51. Al Jazeera purported to investigate this complaint, however, its "investigation" was a bad-faith artifice that lacked any legitimate desire or attempt to verify Ms. Nasr's allegations of discrimination and retaliation. After conducting an initial interview of Ms. Nasr, HR simply accepted management's narrative without scrutiny, and HR never returned to Ms. Nasr to

fact-check management's provably false and disingenuous responses to Ms. Nasr's complaints.

52. Ms. Nayamekye called Ms. Nasr on or about August 5, 2021 to tell her that their "investigation" turned up no evidence of bullying, harassment, discrimination, or retaliation. She refused Ms. Nasr's request to provide written response to the complaint or summary of the investigation. Ms. Nayamekye said that HR viewed the complaint as closed and there would be no further discussion or deliberation. For the second time in her career at Al Jazeera, HR papered over and dismissed Ms. Nasr's legitimate and provable mistreatment. Then, just as they did in 2019 after Ms. Nasr's first formal complaint, Defendants ramped up their harassment, mistreatment, and intimidation of Ms. Nasr in retaliation for speaking up against persistent gender discrimination.

53. In June 2021, Ms. Nasr and her team shot a story about sex workers in the aftermath of the Atlanta shootings earlier that year.  As per AJ+ workflow policy, Ms. Nasr provided the script and a rough cut of the documentary to Defendant Karon for approval.

54. In late July, she received feedback that AJ+ was concerned about the anonymity of the women who appeared in the story and the "provocative nature" of the documentary.

55. During this same period, Defendant Karon admonished Ms. Nasr about "not following basic workflows."

56. In early August, Defendant Karon provided his feedback about the sex workers documentary. Ms. Nasr and her team addressed these concerns including changing characters' names, blurring their faces and distorting their voices. The team resubmitted the piece for Defendant Karon's review.

57.  Defendant Karon reviewed the footage and asked Ms. Nasr to send it to AJ+'s legal department for review, which she did.

58. On September 21, the legal department responded that "full anonymity means that you makes [sic] changes and remove any identifiable feature. I recommend that you run the footage of the interview by the character and get her written approval and that she is happy with the footage."

59. Two days later, before Ms. Nasr could proceed on this directive, she received different advice from the legal department that consent from the interviewee would not be enough to satisfy AJ+'s concerns regarding the footage.

60. In response, Ms. Nasr's team edited the documentary to essentially make the women AJ+ was concerned about completely unidentifiable in any way. Once again Ms. Nasr submitted the footage for Defendant Karon's review.

61. Although he had several months from initial submission to review the footage, Defendant Karon told Ms. Nasr "overall there's too much imagery in here of these women at work or mimicking being at work, to-camera projection of sexual images of themselves, selling sexual fantasies, or the body shots of [T] during her video shoot etc."

62. In fact, the women in the video were fully clothed and do not talk about sexual encounters. However, to address the topic of the documentary, they had to acknowledge that they were sex workers and discuss their work.

63.  Ms. Nasr requested a meeting with Defendant Karon to discuss his feedback. Defendant Karon asked her to provide a list of questions, which she did.

64. Defendant Karon responded, "before we meet, I don't understand this point and its significance to the concerns I raised about imagery: 'We have deep concerns about the

intersection of the male gaze and sexual stereotypes of Asian women and want to ensure as

we evaluate the visuals we're not falling prey to some of the stereotypes we directly call out

in the piece.' Please send a note explaining what you're saying here before we meet."

65. Ms. Nasr responded "The point here, to be straightforward, is that I am concerned that the

critique of the initial imagery is being informed by the limitations of the male gaze - when

we are simply setting the stage of the women's work, the uniform of their work, and doing so

in a way that isn't exploitative and actually is in line with how AJ has traditionally visualized

stories of the sex trade."

66. In response, Defendant Karon canceled the meeting saying that he had to refer the matter to

HR.

67. Later that afternoon, Ms. Nasr received an email stating that they had asked Defendant Karon

to hold off on meeting with her. Ms. Nasr was also copied on an email to the presenter of the

piece from Defendant Karon informing her that the piece was on hold until HR could

complete it's "investigation."

68. Thus, to date Ms. Nasr's work has continued to be tabled for meritless reasons that have

nothing to do with the quality of the work. AJ+ tabled months of work by three producers on

Ms. Nasr's team, demoralizing the team who are now concerned that future documentary

productions could be canceled because of their association with Ms. Nasr.

69. Since tabling the documentary, Defendant Karon has dismissed or ignored all

communications from Ms. Nasr and her team regarding the film. Defendant Moeed told her

that the film is paused indefinitely.

70. Defendants' actions have changed the terms and conditions of Ms. Nasr's employment.  In

2018, before she complained about gender discrimination, AJ+ published 73 videos that Ms.

Nasr executive produced.  As of August 2021, AJ+ has only published five of Ms. Nasr's videos/documentaries.   Ms. Nasr has gone from managing several production teams to having only two.  Defendants have usurped Ms. Nasr's decision-making and editorial responsibilities to the extent that her role has become largely administrative.

71. Defendants' intentional undermining of Ms. Nasr's work productivity has had the intended effect of diminishing Ms. Nasr's standing within Al Jazeera and limiting her career prospects more broadly, as any prospective media employer would look for a producer's output and body of work.

72. This pattern of discrimination and retaliation against Ms. Nasr continues to this day.

73. Al Jazeera had ample notice of hostile treatment of female employees and gender discrimination within the organization because of a job satisfaction survey it conducted in 2019.

74. The results were presented to employees in the DC bureau on September 19, 2019. The following day, there was a private meeting with managers taking a deeper look at the results of the survey, and there was a distinct difference in job satisfaction between men and women. The managing director of AJ+, Dima Khatib, asked Defendant Ahmed to start a "gender task force."

75. The task force held an offsite focus group regarding the survey results and distributed further questionnaires to female staff at AJ+.  The survey showed a clear pattern of gender bias, pay discrepancies, and hostile treatment of female employees. This information was shared with the individual defendants.

76. To date, no significant changes have been made at AJ+ to address the companywide issues with gender-based discrimination identified in the job satisfaction survey and the follow-up "gender task force."

## COUNT I

### Gender Discrimination in Violation of the DCHRA

77. Plaintiff incorporates by reference all the allegations contained in the proceeding paragraphs of the Complaint as if set forth fully herein.

78. Defendants Karon and Ahmed are highly placed management employees of Defendant Al Jazeera Media Network.

79. Plaintiff is female and is supervised by Defendants Karon and Ahmed in her work at Defendant Al Jazeera's AJ+ media service.

80. Defendants have subjected Plaintiff to numerous adverse employment actions because of her gender, including reallocating the employees she supervised to male producers, reassigning her projects to male colleges, confining her to administrative duties, preventing her from completing and producing content, initiating a meritless "investigation" of her.

81. Defendants' actions have created a hostile work environment on the basis of gender that is so severe and pervasive, Ms. Nasr is unable to perform her core job duties of creating (and supervising the creation of) digital media content..

82. Defendants have intentionally undermined, sidelined, and harassed Ms. Nasr in an attempt to force her to simply resign.

83. These actions have caused serious damage to Plaintiff's career and future earning potential.

84. These actions have caused Plaintiff to suffer emotional distress and other inchoate damages.

## COUNT II

## Retaliation in Violation of the DCHRA

85. Plaintiff incorporates by reference all the allegations contained in the proceeding paragraphs of the Complaint as if set forth fully herein.

86. Defendants Karon and Ahmed are highly placed management employees of Defendant Al Jazeera Media Network.

87. Plaintiff is female and is supervised by Defendants Karon and Ahmed in her work at Defendant Al Jazeera's AJ+ media service.

88. Plaintiff complained about conduct that a reasonable person would believe violated the DC Human Rights Act both before and during the limitations period.

89. In retaliation for these complaints Defendants have subjected Plaintiff to numerous adverse employment actions, including but not limited to, citing her for insubordination, threating to "keep an eye on her" and micromanaging her work,  subjecting her to pretextual investigations, canceling her shows, limiting her duties to administrative tasks and creating a hostile work environment.

90. Because of her complaints, Defendants have subjected Plaintiff to a hostile work environment that is sufficiently severe and pervasive to change the terms and conditions of her employment.

91. These actions have caused serious damage to Plaintiff's career and future earning potential.

92. These actions have caused Plaintiff to suffer emotional distress and other inchoate damages.

WHEREFORE, Plaintiff requests that this Court:

    a. Award unspecified compensatory and punitive damages as well as nominal damages against Defendants;

    b. Award Plaintiff's attorney's fees and court costs incurred in pursuing

this matter, and;

c. Award further relief as the nature of this cause shall require.

## JURY DEMAND

Plaintiff demands a trial by jury on those claims so triable.

*/s/ Darrell Chambers*
Darrell Chambers [980872]
CHAMBERS & ROSENBLOOM LLP
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
(301) 500-1575 ext. 871575
darrell@chambersrosenbloom.com

*/s/ Douglas S. Rosenbloom*
Douglas S. Rosenbloom [1016235]
CHAMBERS & ROSENBLOOM LLP
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
(301) 500-1575 ext. 871575
doug@chambersrosenbloom.com

*Counsel for Plaintiff*

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

SARAH NASR
    Vs.                                     C.A. No.      2021 CA 004539 B
AL JAZEERA INTERNATIONAL USA, LLC et al

## INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby** ORDERED **as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum.  The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133.  Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to:  Judge SHANA FROST MATINI
Date:        December 3, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, March 04, 2022
Location:   Courtroom 517
              500 Indiana Avenue N.W.
              WASHINGTON, DC  20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.   The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

Civil Remote Hearing Instructions for Participants

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:  (AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

> *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2: (LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3: (LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

AUDIO ALTERNATIVE**:**  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video. 

**Option 4: (Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

CAIO-60

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).**  After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom.  Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

**D.C. Superior Court**
**12/13/2021 08:33AM**
**Clerk of the Court**

SARAH NASR
_____
                                    Plaintiff
                vs.

Case Number **2021 CA 004539 B**

Moeed Ahmed
_____
                                    Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Darrell Chambers & Douglas S. Rosenbloom
_____
Name of Plaintiff's Attorney

4800 Hampden Lane, Suite 200
_____
Address
Bethesda, MD 20814

(301) 500 - 1575 ext. 871575
_____
Telephone

Clerk of the Court

By _____
                        Deputy Clerk

Date **12/13/2021**

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

Superior Court of the District of Columbia
**CIVIL DIVISION**
Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Filed
D.C. Superior Court
12/10/2021 09:22AM
Clerk of the Court

SARAH NASR

_____
                              Plaintiff

vs.

Al Jazeera International USA, LLC

Case Number _____

_____
                              Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Darrell Chambers & Douglas S. Rosenbloom
_____
Name of Plaintiff's Attorney

4800 Hampden Lane, Suite 200
_____
Address
Bethesda, MD 20814

(301) 500 - 1575 ext. 871575
_____
Telephone

_Clerk of the Court_

By _____
                    Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주세요 ·한국어· ·아랍어· ·암하라어· (202) 879-4828 ·오로모어·

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Filed
D.C. Superior Court
12/13/2021 09:56AM
Clerk of the Court

SARAH NASR

_____
Plaintiff

vs.

**2021 CA 004539 B**

Case Number

Tony Karon

_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Darrell Chambers & Douglas S. Rosenbloom
_____
Name of Plaintiff's Attorney

4800 Hampden Lane, Suite 200
_____
Address
Bethesda, MD 20814

(301) 500 - 1575 ext. 871575
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

12/13/2021

Date _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주세요      የአማርኛ ትርጉም አስፈላጊ ከሆነ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español